**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8          IN THE UNITED STATES DISTRICT COURT

9        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  RIVERDEEP INTERACTIVE LEARNING, LTD.,          No. C 06-5597 CW
    an Irish Company; RIVERDEEP, INC., a
12  Delaware Limited Liability Company,
                                                   ORDER DENYING
13          Plaintiffs,                            PLAINTIFFS'
                                                   APPLICATION FOR
14      v.                                         TEMPORARY
                                                   RESTRAINING
15  MPS MULTIMEDIA, INC., a California             ORDER, AND
    Corporation; EDGAR CHEN; and                   GRANTING
16  SELECTSOFT PUBLISHING,                         EXPEDITED
                                                   DISCOVERY AND
17          Defendants.                            PRESERVATION OF
                                                   DOCUMENTS
18  _____/

19

20       Plaintiffs Riverdeep Interactive Learning, Ltd. (RIL) and its

21  United States affiliate Riverdeep, Inc. (collectively, Plaintiffs)

22  move for a temporary restraining order.  In addition, they request

23  that the Court order expedited discovery and document preservation.

24  Defendants MPS Multimedia, Inc., d/b/a Selectsoft Publishing (MPS),

25  and Edward Chen (collectively, Defendants) oppose Plaintiffs'

26  application.  The matter was submitted on the papers.  Having

27  considered the parties' papers, the Court grants Plaintiffs'

28  request for expedited discovery and document preservation, but it

1   denies Plaintiffs' request for a temporary restraining order.

2                              BACKGROUND

3        Riverdeep and MPS are United States educational software

4   publishers.  In 2001, MPS and Riverdeep's predecessor entered into

5   a licensing agreement permitting MPS to replicate and distribute

6   certain children's educational software, including a variety of

7   "Carmen San Diego" and "Reader Rabbit" titles.  That agreement has

8   been amended and renewed many times.  RIL is Riverdeep's indirect

9   corporate parent and owns the registered copyrights for much of the

10  software licensed by Riverdeep to MPS under the agreement.  RIL

11  granted Riverdeep license and sub-license rights in its software.

12  The trademarks for the licensed software are owned by both RIL and

13  Riverdeep.

14       Under the licensing agreement, MPS agreed to pay a fixed

15  guaranteed license fee plus a per unit license fee calculated on

16  the number of units it produced.  MPS was required to send a

17  quarterly report showing sales, the number of copies of each

18  product manufactured by MPS and the calculation of the royalties

19  for the proceeding quarter.  In addition, the agreement required

20  that MPS permit Riverdeep specific inspection rights to assure

21  proper computation of royalty payments.

22       The agreement permitted MPS to distribute software to the

23  "Non-mainstream Retail Channel," which included independent

24  retailers, but excluded "big box" stores and schools.  Among MPS'

25  customers were Software Outlet and Most Significant Bits, which

26  sold software through their own "brick and mortar" retail stores

27  and mail orders and, later, also through the internet.

28                                  2

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    In February, 2004, Riverdeep and MPS entered into a new

2   agreement, which included a provision that prohibited MPS from

3   selling software to any third party that would sell, market or

4   distribute the software via the internet.  According to MPS,

5   Riverdeep slipped this change in the "authorized sales channel"

6   language in a draft of an amendment to the agreement, after MPS had

7   agreed to make the largest prepaid guaranteed license fee in the

8   parties' history.  Defendant Chen, MPS' Vice President, protested

9   the change; most, if not all, of MPS' customers, including Software

10  Outlet and Most Significant Bits, now sold products on the

11  internet.  Riverdeep's Vice President, John Bartlett, however,

12  assured Defendant Chen that Riverdeep would work with MPS in

13  preserving those customer relationships.  An exception to the no-

14  internet-sale provision was added to the February, 2004 agreement,

15  allowing MPS to continue sales to internet resellers that also had

16  "brick and mortar" retail stores.  Under this exception, MPS could

17  continue selling software to Software Outlet and Most Significant

18  Bits.  But, if MPS sold Plaintiffs' products to any third party

19  internet retailer that did not have a brick and mortar retail

20  store, Riverdeep had the right to terminate the agreement

21  immediately.

22   In 2005, Riverdeep sued Software Outlet.  Unbeknownst to MPS,

23  Software Outlet had closed its brick and mortar retail stores in

24  favor of mail order and internet sales.  Defendant Chen states

25  that, when he learned of the law suit, he asked Mr. Bartlett what

26  Riverdeep expected of MPS.  According to Defendant Chen, Mr.

27  Bartlett stated that MPS did not have to stop selling Riverdeep

28                                   3

titles to Software Outlet.  A year later, however, another

Riverdeep Vice President, Bill Cunningham, approached Mr. Chen and

asked him to stop selling Riverdeep titles to Software Outlet.

Defendant Chen agreed not to sell Plaintiffs' software to Software

Outlet.

Shortly after MPS informed Software Outlet that MPS could no

longer sell Riverdeep titles to it, Defendant Chen learned that

Riverdeep was settling its lawsuit with Software Outlet.  As part

of the settlement, Software Outlet would buy its Riverdeep titles

directly from Riverdeep.  Around the same time, Defendant Chen

learned that Mr. Cunningham had approached MPS' customer, Most

Significant Bits, encouraging it to buy direct from Riverdeep,

instead of from MPS.

In May, 2006, after learning that MPS was selling to internet

retailers operating without a brick and mortar retail store,[1]

Riverdeep sought an audit of MPS' manufacturing and sales.  As part

of the audit, Riverdeep demanded that its auditors have access to

MPS' customer lists.  MPS refused.  According to Riverdeep, MPS'

refusal to allow auditors to see the identity of MPS' customers

thwarted a meaningful independent audit.

On August 16, 2006, Riverdeep sent a letter to Defendant Chen.

The letter stated that, because MPS materially breached the

---

[1]Riverdeep alleges that, in addition to selling Riverdeep products to Software Outlet and Most Significant Bits, MPS was also selling Riverdeep products to Arcamax and www.nothingbutsoftware. According to Riverdeep's investigations, these two internet retailers sell software exclusively on the internet and do not have a "brick and mortar location."  Defendants do not address these allegations in their opposition.

United States District Court

For the Northern District of California

1  agreement by distributing Riverdeep products outside authorized

2  channels and repudiated Riverdeep's audit demand, Riverdeep had no

3  option but to terminate the agreement.  Upon termination for

4  violation of authorized channels, MPS' rights terminated

5  immediately; MPS did not have the right to sell off any remaining

6  inventory.

7       Plaintiffs learned that, after the agreement was terminated,

8  MPS continued to market, sell and distribute Riverdeep products.

9  On September 12, 2006, Plaintiffs filed a complaint against MPS,

10 Defendant Chen and Selectsoft Publishing, alleging breach of the

11 license agreement, copyright and trademark infringement and other

12 claims.  On September 22, 2006, Plaintiffs filed an application for

13 a temporary restraining order, seeking to enjoin Defendants'

14 alleged ongoing infringement of Plaintiffs' copyrights and

15 trademarks through MPS' marketing and sale of Plaintiffs' software

16 without a license.

17                           LEGAL STANDARD

18      A temporary restraining order may be issued only if "immediate

19 and irreparable injury, loss, or damage will result to the

20 applicant" if the order does not issue.  Fed. R. Civ. P. 65(b).  To

21 obtain a temporary retraining order, the moving party must

22 establish either: (1) a combination of probable success on the

23 merits and the possibility of irreparable harm, or (2) that serious

24 questions regarding the merits exist and the balance of hardships

25 tips sharply in the moving party's favor.  See Rodeo Collection,

26 Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir. 1987).

27      The test for granting a temporary restraining order, like that

28                                  5

United States District Court
For the Northern District of California

1 for a preliminary injunction, is a "continuum in which the required

2 showing of harm varies inversely with the required showing of

3 meritoriousness."  Id. (quoting San Diego Comm. Against

4 Registration & the Draft v. Governing Bd. of Grossmont Union High

5 Sch. Dist., 790 F.2d 1471, 1473 n.3 (9th Cir. 1986)).  The moving

6 party ordinarily must show "a significant threat of irreparable

7 injury," although there is "a sliding scale in which the required

8 degree of irreparable harm increases as the probability of success

9 decreases," and vice versa.  United States v. Odessa Union

10 Warehouse Co-op, 833 F.2d 172, 174, 175 (9th Cir. 1987).

                              DISCUSSION

12 I.  Temporary Restraining Order

13    Plaintiffs contend that they are likely to prevail on their

14 copyright and trademark claims.  They argue that irreparable harm

15 is presumed upon a showing of copyright and trademark infringement

16 and, therefore, this Court should grant their temporary restraining

17 order.  Defendants disagree.  They argue that Plaintiffs are not

18 entitled to a temporary restraining order: Defendants contend that

19 Plaintiffs are not likely to prevail on the merits and that, in

20 these circumstances, irreparable harm cannot be presumed.  In

21 addition, they argue that this Court lacks subject matter

22 jurisdiction. Because subject matter jurisdiction is a threshold

23 issue which goes to the power of the Court to hear this case, the

24 Court will address jurisdiction before discussing merits and harm.

25    A.  Subject Matter Jurisdiction

26    In their complaint, Plaintiffs allege that this Court has

27 jurisdiction because this case arises under the Copyright Act and

28                              6

the Lanham Act.  Defendants argue that Plaintiffs' trademark and copyrights claims are breach of contract claims in disguise and, therefore, the Court lacks subject matter jurisdiction over this contract dispute, which is governed by State law.

It is undisputed that federal courts have exclusive jurisdiction over actions that arise under the federal copyright laws and original jurisdiction over actions that arise under the federal trademark law.  28 U.S.C. § 1338.  Nonetheless, as Defendants note, the Ninth Circuit instructs that a case does not arise under the federal copyright and trademark laws merely because the subject matter of the action involves or affects a copyright or trademark.  <u>Topolos v. Caldewey</u>, 698 F.2d 991, 993 (9th Cir. 1983) ("the word 'copyright' is not so compelling as to invoke federal jurisdiction upon its mere mention") (citation omitted); <u>Postal Instant Press v. Clark</u>, 741 F.2d 256, 258 (9th Cir. 1984).  Thus, district courts have "dismissed complaints in copyright cases that present only questions of contract law," as well as complaints in trademark cases that present only questions of contract law.  <u>Dolch v. United California Bank,</u> 702 F.2d 178, 180 (9th Cir. 1983); <u>Postal Instant Press</u>, 741 F.2d at 258.  However, it is not always evident "whether a case involving interdependent copyright and contract claims 'arises under' the federal copyright laws for the purposes of 28 U.S.C. § 1338(a)"; indeed, this is one of the "'knottiest problems in copyright jurisprudence,'" <u>Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.</u>, 336 F.3d 982, 983 (9th Cir. 2003) (quoting 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyrights § 12.01[A], at 12-14 (2003)).

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1    Plaintiffs do not address any of the above cases that

2  Defendants cite in their opposition.  Instead, Plaintiffs state

3  that federal courts regularly decide copyright cases that also

4  involve contractual licensing disputes, a statement that is

5  undisputed and that fails to respond to Defendants' arguments

6  regarding jurisdiction.  Plaintiffs do, however, cite <u>Vestron Inc.</u>

7  <u>v. Home Box Office, Inc</u>., 839 F.2d 1380 (9th Cir. 1988).  In

8  <u>Vestron</u>, the Ninth Circuit determined that the district court had

9  jurisdiction because the plaintiff's complaint made out an

10  infringement claim and sought remedies expressly created by federal

11  copyright law.  839 F.3d at 1381-82.  Here, the complaint also

12  makes out an infringement claim by Plaintiff RIL alone against

13  Defendants MPS and Chen.  RIL seeks damages "in an amount to be

14  determined at trial, including statutory damages against MPS and

15  Chen for their knowing and willful infringement of RIL's

16  copyrights."  Complaint, ¶ 29.

17    Nonetheless, by citing this one case and ignoring the cases

18  Defendants cite, Plaintiffs have not shown likelihood of success on

19  the merits of their jurisdictional argument.  Plaintiffs have only

20  established that serious questions regarding the merits exist.[2]

21    However, the Court notes that the licensing agreement between

22  Riverdeep and MPS provides that all claims and lawsuits in

23  connection with the agreement must be brought in a Massachusetts

24

25    [2]Although Plaintiffs establish that there is at least a
   reasonable possibility that the Court has jurisdiction based on
26  RIL's infringement claim, the Court will again consider whether it
   has jurisdiction when it rules on Defendants' motion to dismiss,
27  which was recently filed.

28                                    8

United States District Court
For the Northern District of California

1  court.  In their complaint, Plaintiffs state that RIL is not a

2  party to the agreement, and thus not bound by that language, and

3  that Riverdeep "waives" its right to have this dispute adjudicated

4  in Massachusetts.  As Defendants note, however, Plaintiffs cannot

5  unilaterally change the forum selection clause in the license

6  agreement.  Thus, even if there is federal jurisdiction,

7  Riverdeep's claims against MPS may be brought in the wrong court

8  and subject to transfer or dismissal.

9       B.   Likelihood of Success on the Merits

10      The parties dispute whether Plaintiffs are likely to succeed

11  on the merits of their claims.

12      To prevail on their copyright and trademark infringement

13  claims,[3] Plaintiffs must show ownership of a valid copyright and

14  trademark and that Defendants violated their exclusive rights under

15  the Copyright Act and the Lanham Act.  See Ellison v. Robertson,

16  357 F.3d 1072, 1076 (9th Cir. 2004).  Plaintiffs note that there is

17  no dispute regarding their ownership.  Nor is there a dispute that

18  Defendants sold software to internet-only retailers.  Defendants do

19  not deny that they continue to sell licensed software, even after

20  they received notice of termination of the licensing agreement.

21  Instead, Defendants contend that, in light of representations made

22  by Plaintiffs, they were entitled to sell Plaintiffs' software to

23  MPS' existing customers.  Because Defendants do not respond to

24

25      [3]Plaintiffs' application for a temporary restraining order
    states that Riverdeep and RIL are likely to prevail on their
26  trademark claims.  According to the complaint, however, RIL only
    brings a claim for copyright infringement; it does not bring a
27  trademark infringement claim.

28

1  Plaintiffs' allegations concerning MPS selling software to Arcamax

2  and www.nothingbutsoftware, it is not known whether these two

3  companies were existing customers.  Plaintiffs argue that

4  Defendants' subjective beliefs regarding the agreement, based on

5  alleged assurances by Mr. Barlett, are irrelevant under California

6  law because the licensing agreement is an integrated agreement.  It

7  is not clear, however, that California law governs the contract.

8  The agreement states that "its validity, construction and

9  performance shall be governed in all respects by the laws of the

10  Commonwealth of Massachusetts."  Regardless of what State law

11  governs, the Court finds that Plaintiffs have not shown that they

12  are likely to succeed on the merits; they have shown only that

13  serious questions exist regarding the merit of their copyright and

14  trademark infringement claims.

15          C.   Irreparable Harm and Balance of Hardships

16      Plaintiffs note that "a presumption of irreparable injury

17  arises if the plaintiff is able to show a likelihood of success on

18  the merits of its copyright infringement claim."  <u>Cadence Design</u>

19  <u>Sys., Inc. v. Avant! Corp.</u>, 125 F.3d 824, 826-27 (9th Cir. 1997).

20  The same presumption arises in trademark infringement cases.

21  <u>Nautilus Group, Inc. v. ICON Health and Fitness, Inc.</u>, 372 F.3d

22  1330, 1334 (Fed. Cir. 2004).  But, here, Plaintiffs were unable to

23  show a likelihood of success on the merits of their copyright or

24  trademark infringement claims.  Thus, there is no presumption of

25  irreparable injury.

26      Instead, the Court must determine whether the balance of

27  hardships tips sharply in Plaintiffs' favor.  Plaintiffs contend

28                                  10

United States District Court

For the Northern District of California

1   that it does because they will suffer actual irreparable harm if

2   MPS is not enjoined.  According to Plaintiffs, Riverdeep has

3   licensed other parties to distribute its software over the internet

4   and operates its own internet-based direct-to-consumer website;

5   therefore, to the extent that MPS continues to represent that it is

6   an authorized distributor, to copy and to distribute Plaintiffs'

7   software and to use Plaintiffs' trademarks, MPS' conduct harms

8   Riverdeep's market, brand name and other distributors.

9        MPS disagrees that any such harm to Plaintiffs would be

10  irreparable.  It contends that there is no conceivable harm to

11  Plaintiffs that cannot be remedied through monetary damages.

12  Instead, it focuses on the considerable hardship it would suffer if

13  the Court granted Plaintiffs' application for a temporary

14  restraining order.  MPS notes that it would be unable to fill

15  orders from customers and would thereby jeopardize long-term

16  business relationships; it also notes that it would be stuck with a

17  considerable inventory for which it has already paid.

18       Plaintiffs' argument that the Court should ignore any possible

19  hardship to Defendants is unpersuasive.  In Cadence Design, the

20  Ninth Circuit instructs that, where the defendant contends that it

21  will lose profits "from an activity which has been shown likely to

22  be infringing," the defendant's hardship "merits little equitable

23  consideration."  Cadence Design, 125 F.3d at 830.  But, as noted

24  above, Plaintiffs have not shown that they are likely to succeed on

25  their claims.  Thus, the Court considers Defendants' hardship.

26       The Court finds that Plaintiffs do not show that the balance

27  of hardships tips sharply in their favor.  Plaintiffs provide no

28                                      11

United States District Court

For the Northern District of California

1  evidence that their brand name, market or other distributers are

2  harmed by MPS' conduct.  Any loss in profits would be compensable

3  with money damages.

4  II.  Expedited Discovery and Preservation Order

5      While Plaintiffs are unable to show that they are entitled to

6  a temporary restraining order, they may, with additional evidence,

7  be able to show that they are entitled to a preliminary injunction.

8  Plaintiffs seek expedited discovery for their preliminary

9  injunction motion.  In addition, Plaintiffs ask the Court to issue

10  a document preservation order to require Defendants to preserve any

11  documents and communications relating to the assignment,

12  manufacturing, sale, distribution or copying of Plaintiffs'

13  products.

14      Courts allow expedited discovery upon a showing of good cause.

15  Semitool, Inc. v. Tokyo Electron Am., Inc., 208 F.R.D. 273, 276

16  (N.D. Cal. 2002) (noting that courts have recognized that good

17  cause is frequently found in cases involving claims of infringement

18  and unfair competition).  In Semitool, the court explained, "Good

19  cause may be found where the need for expedited discovery, in

20  consideration of the administration of justice, outweighs the

21  prejudice to the responding party."  Id.  The Court finds that

22  there is good cause for expedited discovery; such discovery would

23  allow Plaintiffs to present their motion for preliminary injunction

24  on a more fully developed record and would assist the Court in

25  determining whether a preliminary injunction should be granted.

26      Defendants do not contest a document preservation order.

27  Although Defendants disagree with Plaintiffs' arguments regarding

28                                    12

**United States District Court**

For the Northern District of California

1  the need for expedited discovery, they are willing to agree that

2  the parties may propound and respond to discovery in less than the

3  standard time frame.  Defendants seek two weeks to gather the

4  documents Plaintiffs request.  Two weeks is a reasonable amount of

5  time.

6       Defendants, however, state that they will produce certain

7  responsive documents only if a protective order is in place.

8  Specifically, they request that the Court order that any production

9  of MPS' customers list be made "for attorneys' eyes only."  Given

10 the relationship between the parties, this request is reasonable.

11 The Court is not persuaded that designating the customer lists "for

12 attorneys' eyes" will hamper Plaintiffs' counsel's efforts in

13 preparing the preliminary injunction motion.  Plaintiffs' counsel

14 can do their own research concerning whether certain of MPS'

15 customers are internet-only retailers, without a brick and mortar

16 store.

17      The Court orders that any production of MPS' customer lists be

18 made "for attorneys' eyes only."  In addition, although defense

19 counsel likely has already instructed Defendants regarding document

20 preservation, the Court orders Defendants to preserve all relevant

21 documents.

22                              CONCLUSION

23      For the foregoing reasons, Plaintiff's Application for a

24 Temporary Restraining Order, Expedited Discovery and Preservation

25 of Documents (Docket No. 3) is GRANTED IN PART and DENIED IN PART.

26 Specifically, the Court denies Plaintiffs' application for a

27 temporary restraining order, but grants Plaintiffs' request for

28

United States District Court

For the Northern District of California

1    expedited discovery and document preservation.  Defendants shall

2    produce, within two weeks from the date of this order, the

3    documents requested in Plaintiffs' First Request for Production,

4    attached to Plaintiffs' proposed order as Exhibit A.  The identity

5    of buyers shall be confidential and "for attorneys' eyes only."  In

6    addition, Defendants are ordered to preserve any documents and

7    communications relating to the assignment, manufacturing, sale,

8    distribution or copying of Plaintiffs' software.

9        IT IS SO ORDERED.

10   Dated: 10/11/06

11                    CLAUDIA WILKEN
                        United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                  14